UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ERIC CARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01756-SEB-MG |
| | ) | |
| CENTURION HEALTH OF INDIANA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Order Denying Motion for Summary Judgment**

Plaintiff Eric Carter filed this action contending that his constitutional rights were violated while he was incarcerated at the Pendleton Correctional Facility ("Pendleton") alleging that he has not received necessary treatment for his kidney condition. The defendants move for summary judgment arguing that Mr. Carter failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, the motion for summary judgment, dkt.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

**II.**
**Factual Background**

At all times relevant to the claims in this suit, Mr. Carter was incarcerated at Pendleton, a prison maintained by the Indiana Department of Correction (IDOC). Dkt. 2 at 3-4.

### A. Offender Grievance Process

The IDOC has a standardized offender grievance process which was in place during the time Mr. Carter alleges his rights were violated. *See* dkt. 46-2.

IDOC Policy and Administrative Procedures 00-02-301, Offender Grievance Process ("Offender Grievance Process") is the Indiana Department of Correction policy governing the grievance procedure and details how a prisoner must exhaust his administrative remedies using that procedure. *Id.*  During the relevant period, the grievance process consisted of three steps: (1) submitting a formal grievance following unsuccessful attempts at informal resolutions; (2) submitting a written appeal to the facility Warden/designee; and (3) submitting a written appeal to the IDOC Grievance Manager. *Id.* at 3. Successful exhaustion of the grievance process requires

timely pursuing each step or level of the process. *Id*. The Grievance Process provides "**The right to appeal is absolute and the offender shall not be informed otherwise or asked to waive this right.**" *Id*. at 12 (emphasis in original).

When an inmate files a grievance, the Grievance Specialist "shall review the grievance form within ten (10) business days of receiving it and shall either accept it and record it, or reject it." *Id*. at 10. "The Offender Grievance Specialist may reject the grievance form and return it to the offender unfiled if any of the" requirements listed in the policy are not met. *Id*. Among other things, a formal grievance must be completely filled out including with a request for relief. *Id*. at 9 ("Each completed State Form 45471, 'Offender Grievance,' must meet the following standards: . . . Each part of the form shall be completed . . . ."). The Grievance Specialist then has ten business days to either accept the Offender Grievance or reject it using a State Form 47475 "Return of Grievance" document. *Id.* at 10. If the inmate receives a Return of Grievance, he or she has five business days from the date of the Return of Grievance to return a revised Offender Grievance form. *Id.* The Grievance Specialist has fifteen business days from the date the grievance is recorded to complete an investigation and provide a response, absent an extension of time. *Id.* The Grievance Process further provides that if there is a delay in responding to a grievance, the Grievance Specialist must seek an extension of time and notify the inmate of the delay. *Id*. at 11-12.

### B. Mr. Carter's Participation in the Grievance Process

Mr. Carter filed four formal grievances related to his medical care: Grievance No. 24-169262, Grievance No. 24-176730, Grievance No. 24-184484, and Grievance No. 24-186182. Dkt. 46-1 at 5, ¶ 24.

Mr. Carter filed Grievance No. 24-169262 on December 10, 2023. Doc. 46-3 at 2. This Grievance did not comply with the Grievance Process because Mr. Carter did not complete the

box labeled "state the relief that you are seeking." *See* dkt. 46-3 at 2. Grievance staff therefore responded to this grievance informing Mr. Carter that the grievance was not properly filled out. Dkt. 46-3 at 1. The response informed him that "a return of grievance does not mean [his] grievance is denied. It means there are issues and they need to be corrected to be able to move on with the grievance process." *Id.* There is no evidence that Mr. Carter was provided with a State Form 45475 "Return of Grievance" document. Mr. Carter did not resubmit Grievance No. 24-169262 with all the sections filled out.

Mr. Carter filled out Grievance No. 24-176730 on February 19, 2024, and gave it to the Officer on Duty to give to the counselor for processing. Dkt. 51 ¶ 18; dkt. 46-3 at 5. On March 4, 2024, Mr. Carter submitted a request for interview notifying the Grievance Specialist that he had not received a response. Dkt. 51-1 at 8. Grievance No. 24-176730 was stamped received on March 14, 2024. Dkt. 46-3 at 7. On March 19, 2024, Mr. Carter filed an appeal because 21 days had passed since he gave his grievance to the Officer on Duty and did not receive a response. Dkt. 51-1 at 9. On July 23, 2024, the Grievance Specialist responded to this grievance, stating that the grievance was received on March 14, 2024, and that Mr. Carter was not given a timely response. Dkt. 51-1 at 10. The response continued to explain that an appeal had not been received and the grievance was out of time for appeal. *Id.* Mr. Carter did not receive a State Form 45475 "Return of Grievance."

Mr. Carter filed Grievance No. 24-184484 on June 7, 2024 and gave it to his counselor. Dkt. 51 ¶ 4; dkt. 51-1 at 12. That grievance was stamped "Received" on June 21, 2024. *Id.* Mr. Carter filed an appeal on July 5, 2024, because 21 days had passed without a response. Dkt. 51-1

at 14.[1] Mr. Carter filed another appeal on July 25, 2024, because he still had not received a response. *Id.* at 15. The Grievance Specialist provided a Grievance Response to Grievance No. 184484 on September 6, 2024, stating that Mr. Carter had been seen several times by medical and if he had continuing concerns, he should submit a new healthcare request. *Id.* at 17. That response concluded, "your grievance is deemed resolved at the facility level." *Id.*

Mr. Carter filed Grievance No. 24-186182 on June 27, 2024. Dkt. 51-1 at 18. That grievance was stamped received on July 13, 2024. *Id.* On July 15, Mr. Carter submitted an appeal form stating that he had not received a response to this grievance. Dkt. 51-1 at 15. The Grievance Specialist sent Mr. Carter a response on October 9, 2024, stating that Mr. Carter had had an ultrasound and his grievance was resolved. *Id.* at 20. Mr. Carter filed a grievance appeal. *Id.*

### III. Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

---

[1] The defendants question the veracity of this and other documents, pointing out that Mr. Carter did not submit them in support of his reply in support for a preliminary injunction or in his initial disclosures. But the summary judgment stage is not the appropriate time to weigh evidence.

"Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Carter] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id*. (internal quotation omitted). An administrative procedure is unavailable when "it operates as a simple dead end," when it "might be so opaque that it becomes, practically speaking, incapable of use" or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860-61 (2016)

Here it is undisputed that Mr. Carter did not complete the Grievance Process as to any of his grievances. But the designated evidence reflects a pattern of failure by prison officials to follow the Grievance Policy. First, responses to all four of Mr. Carter's grievances were delayed for several months, with no extensions requested or provided as required by the Policy. Next, when Mr. Carter finally received a response to Grievance No. 24-176730, he was told – contrary to the requirement of the Grievance Policy that an inmate has an absolute right to appeal – that he was out of time to appeal. Dkt. 46-3 at 4. It is therefore undisputed that prison officials, through their inactions and their actions, made the Grievance Process unavailable to Mr. Carter. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) (holding that administrative remedies were unavailable because a staff member told the prisoner that he could not file a grievance for the issue that gave rise to his complaint); *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) ("An administrative remedy is not 'available,' and therefore need not be exhausted, if prison officials erroneously

inform an inmate that the remedy does not exist or inaccurately describe the steps he needs to take to pursue it.").

Because the designated evidence reflects that the Grievance Process was made unavailable to Mr. Carter, the defendants are not entitled to summary judgment.

## IV. Conclusion

For the reasons explained above, the defendants are not entitled to summary judgment on the exhaustion defense and that motion, dkt. [44], is **denied**. Further, the current record before the Court shows that the plaintiff is entitled to summary judgment on the defendant's affirmative defense of exhaustion.  Therefore, pursuant to Rule 56(f)(1), the Court gives the defendants notice of its intent to grant summary judgment in the plaintiff's favor on this issue.  The defendants have **through September 4, 2026**, in which to respond to the Court's proposal.  Alternatively, the defendants may withdraw his affirmative defense by this date.

**IT IS SO ORDERED.**

Date:    8/10/2026

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ERIC CARTER
269056
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Anna Kristine Marvin
Riley Bennett Egloff
amarvin@rbelaw.com

Katie R. Osborne
RILEY BENNETT EGLOFF LLP
kosborne@rbelaw.com